UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:09-CR-6-TLS |
| | ) | |
| JAIME R. VILLARREAL | ) | |

## OPINION AND ORDER

The Defendant, Jaime Villarreal, has pleaded guilty to count two of the Indictment [ECF No. 12] charging him with violating 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 for possessing with the intent to distribute two Schedule II controlled substances, and one Schedule I Substance. This matter is before the Court on the Defendant's objections to multiple findings in the Amended Presentence Investigation Report (the PSR or the Report) prepared by the United States Probation Office. Those objections include: (1) seeking safety valve application under § 5C1.2; (2) seeking an adjustment for mitigating role under § 3B1.2; (3) objecting to the firearms described in paragraph 28 as they inform the Court's determination on a § 2D1.1(b)(1) enhancement; and (4) objecting to the conversions and drug quantities identified in paragraph 42.

## PROCEDURAL BACKGROUND

After the Defendant entered his guilty plea the Court held an evidentiary hearing [ECF No. 71] on February 25, 2010, to allow the parties to present evidence on the sentencing issues now before the Court. The Defendant filed his Sentencing Issues Memorandum [ECF No. 75] on May 21, 2010. The Government filed its Response to the Defendant's Sentencing Memorandum [ECF No. 77] on June 22, 2010, which for the first time raised the Government's assertion that the Defendant should receive a two-level gun enhancement pursuant

to § 2D1.1(b)(1). In order to allow the Defendant to respond to the Government on the gun enhancement the Court granted the Defendant's request for additional briefing, which the Defendant filed as Defendant's Supplemental Sentencing Memorandum [ECF No. 82] on September 10, 2010. The sentencing issues are fully briefed and ready for resolution.

**FACTUAL BACKGROUND**

The police were investigating Villarreal's co-defendant Valderas, based on Valderas's communications with a Confidential Informant ("CI"). During the course of that investigation the police obtained a search warrant for the Saldana Body Shop, which was next door to the Defendant's auto shop, Los Dos Compas. The police obtained the Defendant's written consent to search Los Dos Compas while they were executing their search warrant at the Saldana Body Shop. While searching Los Dos Compas, inside the kitchen the police found heroin, a scale, weights to calibrate the scale, and a box of bags. The police also found cocaine, crack cocaine, heroine, and mail addressed to the Villarreal family underneath the floorboards. Los Dos Compas also had an upstairs with a bedroom and bathroom. In the upstairs hallway the police found a camouflage bag with approximately $99,700 in cash and the upstairs bedroom contained Villarreal's Texas identification. An upstairs closet contained a vacuum sealer, which Special Agent Michael Foldesi testified at an evidentiary hearing is commonly used to seal money and drugs. There was also a safe in the office of the Defendant's business, which the Defendant opened for the police once getting a key from his residence. The safe contained cash, including money that the police had provided to the CI to buy drugs during a controlled purchase, prepaid phone cards, and documents with the Defendant's name on them. While searching the

Defendant's residence the police found candles showing icons of drug traffickers.

The Defendant admitted to operating Los Dos Compas for about seven years and that his business mainly worked on the mechanics of wrecked cars and then the Saldana Body Shop completed the body work next door. At some point around a year before the conduct leading to his conviction the Defendant met with Hispanic males at a bar and agreed to let them unload drugs at his shop in exchange for a small payment of around $600 each time they unloaded a car.

Valderas, worked for the Defendant. As part of their investigation the police executed a search warrant at Valderas's home. During this search, the police found the following items in Valderas's bedroom and closet: an unlocked safe containing an envelope with vehicle titles and a plastic sack with cylinders or disks of cocaine; a leather jacket with small bags of cocaine in the pockets; a digital scale with white residue on it; two boxes with unloaded handguns, magazines, and ammunition; and a loaded gun. As a result of the Defendant's conviction of a misdemeanor domestic battery in 2005, the Defendant gave Valderas a gun so he would not violate 18 U.S.C. § 922(g)(9). The record is not clear if the gun that the Defendant gave Valderas in 2005 was one of the guns found at Valderas's residence during the search in this investigation and if so, which gun it was among the six guns found at the residence.

**DISCUSSION**

The statutory minimum sentence in this case is 120 months pursuant to 21 U.S.C. § 841(a)(1). The Sentencing Guidelines require that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." U.S. Sentencing Guidelines Manual

§ 5G1.1(b) (2009). However, if a defendant meets the requirements under § 5C1.2 of the Guidelines ("the safety valve") the sentence should be within the guideline range, without regard to the statutory minimum. *See Corral v. United States*, 498 F.3d 470, 471 (7th Cir. 2007) (acknowledging that if the district court had applied the safety valve the resulting sentence could have been below the mandatory minimum). The Court finds that the Defendant is eligible for the safety valve and will sentence him accordingly. Therefore, the Court must also address the Defendant's request for a mitigating role adjustment, the Government's request for a firearms enhancement, and the parties' dispute over the drug quantities to the extent that these issues impact the guideline calculations after applying the safety valve.

**A.     Safety Valve**

The Defendant argues that he meets all of the requirements under § 5C1.2 and is eligible to receive a sentence below the statutory minimum. The Government only contests whether the Defendant "did . . . possess a firearm . . . (or induce another participant to do so) in connection with the offense." U.S. Sentencing Guidelines Manual § 5C1.2(a)(2). The parties do not dispute the other four factors under § 5C1.2(a) and the Court finds that the Defendant meets the other factors stated in (1), (3), (4), and (5) of § 5C1.2(a).[1] There are no allegations that the Defendant

---

[1] The other factors in § 5C1.2(a) are:
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of 4A1.3 (Departures Based on Inadequacy of Criminal History Category); . . .
> (3) the offense did not result in death or serious bodily injury to any person;
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the

actually possessed a firearm in connection with the present offense. Therefore, the only issue is whether co-conspirator liability or constructive possession prevents application of the safety valve in this case. The Defendant must establish by a preponderance of the evidence that he meets the requirements for the safety valve, including under § 5C1.2(a)(2). *United States v. Ramirez*, 94 F.3d 1095, 1100 (7th Cir. 1996).

**1.** *Co-conspirator Liability*

As discussed below, the Defendant will receive a firearms enhancement under § 2D1.1(b)(1) of the Sentencing Guidelines under a theory of co-conspirator liability. Whether such a firearm enhancement precludes application of the safety valve has not been addressed by the Seventh Circuit. *United States v. Harris*, 366 F.3d 593, 597 n.4 (7th Cir. 2004). However, a majority of the circuits have found that a firearms enhancement under § 2D1.1(b)(1) does not preclude application of the safety valve. *United States v. Delgado-Paz*, 506 F.3d 651, 655–56 (8th Cir. 2007); *United States v. Herrera*, 446 F.3d 283, 288 n.5 (2nd Cir. 2006); *United States v. Bolka*, 355 F.3d 909, 914 (6th Cir. 2004); *United States v. Figueroa-Encarnacion*, 343 F.3d 23, 34 (1st Cir. 2003); *United States v. Pena-Sarabia*, 297 F.3d 983, 988–99 (10th Cir. 2002); *United States v. Nelson*, 222 F.3d 545, 551 (9th Cir. 2000); *United States v. Clavijo*, 165 F.3d 1341, 1343–44 (11th Cir. 1999); *United States v. Wilson*, 114 F.3d 429, 432 (4th Cir. 1997); *United States v. Wilson*, 105 F.3d 219, 222 (5th Cir. 1997); *In re Sealed Case*, 105 F.3d 1460, 1462 (D.C. Cir. 1997). Some circuits have found constructive possession prevents application of

---

defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S. Sentencing Guidelines Manual § 5C1.2(a).

the safety valve, but have distinguished constructive possession from co-conspirator liability. *United States v. Herrera*, 446 F.3d 283, 286–88 (2d Cir. 2006); *United States v. Matias*, 465 F.3d 169, 174 (5th Cir. 2006); *United States v. McLean*, 409 F.3d 492, 500–01 (1st Cir. 2005). In *Matias*, the Fifth Circuit explained:

> There is a significant difference between co-conspirator liability and constructive possession. Under co-conspirator liability, one co-conspirator is liable for all reasonably foreseeable acts committed by his other co-conspirators in furtherance of the conspiracy. If co-conspirator liability applied in the context of § 5C1.2(a)(2) . . . it would permit a defendant to be held accountable for a co-conspirator's possession of a firearm even if the defendant had no access to the firearm and did not even know his co-conspirator possessed a firearm, as long as the co-conspirator's possession was reasonably foreseeable and in furtherance of the conspiracy. In contrast, for a defendant to have constructive possession of a firearm, the defendant himself must have "ownership, dominion or control over the [firearm] . . . or dominion or control over the premises in which the [firearm] is concealed." Recognizing the distinction between these two concepts, several courts have concluded that, while a defendant may still qualify for the safety valve if his co-conspirator possessed a firearm, his own constructive possession prevents him from benefitting from that provision.

*Matias*, 465 F.3d at 173–74 (citations and footnotes omitted). No circuit has found that co-conspirator liability alone prevents application of the safety valve. Even though the firearms enhancement applies to the Defendant, the Court will find, consistent with the majority of circuits, that co-conspirator firearm liability alone is not enough to deny the Defendant the safety valve.

### 2. *Constructive Possession*

Even though co-conspirator liability is not enough to deny the safety valve, constructive possession may be enough. *See Herrera*, 446 F.3d at 286–88; *Matias*, 465 F.3d at 174; *McLean*, 409 F.3d at 500–01. The Government argues that the Defendant constructively possessed at least

6

the gun that he gave to Valderas in 2005. The Defendant responds that he did not give Valderas the gun to "hold in trust" and that the Government's argument on constructive possession fails because the Defendant gave up the gun in 2005 and the earliest alleged illegal conduct—the Defendant's meeting with unnamed individuals at a bar to arrange drug unloading at his shop—occurred in 2007, nearly two years after he gave the gun to Valderas.

Generally "constructive possession means control or dominion over property without actual custody of it." *United States v. Miller*, 588 F.3d 418, 419 (7th Cir. 2009) (citing *United States v. Caldwell*, 423 F.3d 754, 758 (7th Cir. 2005)). The safety valve provides some scenarios where a defendant will not be eligible based on something short of actual possession of a gun. U.S. Sentencing Guidelines Manual § 5C1.2 cmt. n.4 ("[T]he term 'defendant,' as used in subsection (a)(2), limits the accountability of the defendant to his own conduct and conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused."). A defendant who constructively possesses a firearm is just as culpable for safety valve purposes as a defendant who actually possesses a firearm. *Herrera*, 446 F.3d at 287 ("There is little meaningful difference in culpability between the defendant who possesses a firearm on his person while committing a drug offense and a defendant who has a firearm within his personal dominion and control while committing that same offense."); *Matias*, 465 F.3d at 174.

The Defendant has met his burden of establishing by a preponderance of the evidence that he did not actually or constructively possess a firearm and is therefore eligible for application of the safety valve. The Defendant gave a gun to Valderas in 2005 and there is no evidence that he ever saw or had access to the gun again. There was no evidence of any firearms at the Defendant's business or home, and nothing to indicate that the Defendant had a firearm

7

within his personal dominion or control. *See United States v. Harris*, 587 F.3d 861, 866 (7th Cir. 2009) (finding constructive possession when a defendant placed guns in his girlfriends bedroom without her knowledge and he told the police exactly where the guns were located); *United States v. Perez*, 581 F.3d 539, 547 (7th Cir. 2009) (discussing cases where constructive possession existed because guns were in the same house where the police found drugs). The guns in Valderas's house were too far removed from the Defendant's access or control. *Cf. Herrera*, 446 F.3d at 288 (finding that the co-defendants were jointly responsible for the stash houses and "each exercised personal dominion and control over the firearms in those locations"). Given the Defendant's employer-employee relationship with Valderas, obtaining a weapon may not have been difficult to accomplish, but the record does not indicate that a weapon was so readily available to the Defendant as to rise to the level of constructive possession. *United States v. Harris*, 325 F.3d 865, 870 (7th Cir. 2003) (finding that a special relationship alone cannot be the sole basis to support a conclusion of constructive posession). Therefore, the Defendant meets the criterion of § 5C1.2(a)(2)—in addition to all of the other safety valve criteria—and the Court will grant the Defendant's request to apply the safety valve.

**B.     Mitigating Role**

The Defendant argues that he is entitled to an adjustment under § 3B1.2 because he was a minor participant in the criminal activity. The Government responds that the Defendant was not a minor participant because "he provided to the conspiracy the critical component of an offloading point and stash location for large quantities of drugs and drug money." (ECF No. 77, 17.) The Sentencing Guidelines allow for a two level decrease if a defendant was a minor

participant, which the Guidelines describe as "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant. . . . [and] who is less culpable than most other participants, but whose role could not be described as minimal." U.S. Sentencing Guidelines Manual § 3B1.2, cmt. n.3(A), 5. The Defendant bears the burden of showing by a preponderance of the evidence that he is eligible under § 3B1.2 for a reduction. *United States v. McKee*, 389 F.3d 697, 700 (7th Cir. 2004) (citing U.S. Sentencing Guidelines Manual § 3B1.2, cmt. n.3; *United States v. Corral*, 324 F.3d 866, 874 (7th Cir. 2003)). Courts apply § 3B1.2 based mostly on the individual facts of each case. *United States v. Doe*, 613 F.3d 681, 687 (7th Cir. 2010). When deciding whether a defendant qualifies for a reduction under § 3B1.2 the "courts must consider a defendant's role in a conspiracy." *United States v. White*, 582 F.3d 787, 797 (7th Cir. 2009).

  The Defendant's conduct is not consistent with a defendant who is a minor participant in criminal activity. Without the Defendant's assistance the drug conspiracy would not have had a place to unload the drugs that were being transported in the engine blocks of cars. Also, the Defendant provided a location for the conspirators to stash cash and drugs. The Defendant's operation of a stash house is similar to the stash house operated in *United States v. Corral*, 324 F.3d at 874, where the defendant was entrusted with the delivery of drugs, had sole possession of the stash house where drugs and money were kept, and was aware that his role furthered the sale of drugs. The Defendant was the owner and operator of Los Dos Compas, the automobile repair shop where unnamed individuals unloaded drugs. In addition to being a venue for unloading drugs, the police found $20,000 of drug money in a safe, drugs and drug paraphernalia in a kitchen, and large quantities of drugs under the floor. The Court does not need to find that the

9

Defendant was a "drug-kingpin" in order to determine that he is not eligible for a reduction under § 3B1.2. Given the amount of drugs and money found at the shop that the Defendant owns, the Court finds that the Defendant has not met his burden in showing that he was only a minor participant in the criminal activity. *See United States v. Hill*, 563 F.3d 572, 579 (7th Cir. 2009) ("[J]ust because a particular defendant may have been less culpable than the leader of concerted criminal activity does not mean that he qualifies as a minor or minimal participant.") (citing *United States v. McGee*, 408 F.3d 966, 987 (7th Cir. 2005)).

### C. Firearms Enhancement

The Government argues that the Defendant should receive a firearms enhancement under Sentencing Guideline § 2D1.1(b)(1) based on a theory of co-conspirator liability. The Defendant responds that it was not reasonably foreseeable that Valderas would possess any guns.

Sentencing Guideline § 2D1.1(b)(1) provides an enhancement "[i]f a dangerous weapon (including a firearm) was possessed." A defendant can be "on the hook for firearms possessed by their coconspirators so long as such possession was reasonably foreseeable." *United States v. Luster*, 480 F.3d 551, 558 (7th Cir. 2007). The Court must make two determinations before applying § 2D1.1(b)(1) under a co-conspirator liability theory. *Id.* First, a co-conspirator must have actually possessed a firearm in furtherance of the conspiracy, and second, the "coconspirator's firearm possession [must have been] reasonably foreseeable to the defendant." *Id.* (citing U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B); *United States v. Olson*, 250 F.3d 655, 684 (7th Cir. 2006)). Guns that are found within close proximity to drug activity are presumptively in furtherance of the conspiracy. *United States v. Corral*, 324 F.3d 866, 873 (7th

Cir. 2003). Foreseeability requires more than the general fact that drug trafficking often involves firearms. *United States v. Vold*, 66 F.3d 915, 921 (7th Cir. 1995).

Valderas possessed the guns in his bedroom along with all of the drugs and drug paraphernalia found at his residence. The Government has met its burden in establishing the proximity of the guns to the drugs and the Defendant has failed to show that the guns were not connected with the drugs at Valderas's house and the underlying offense. *United States v. Strode*, 552 F.3d 630, 635 (7th Cir. 2009) ("'Once the government has proved possession [by a co-conspirator], the defendant must show it is clearly improbable that the weapon was connected with the offense.'") (quoting *United States v. Acosta*, 534 F.3d 574, 588 (7th Cir. 2008)). The only issue is whether the Defendant could reasonably foresee that Valderas would possess the guns.

There is no evidence that the Defendant ever requested Valderas obtain or use a gun. The Defendant did not keep firearms at his business or residence to protect large quantities of cash and drugs. However, the Defendant did provide Valderas with a gun in 2005. Even though this was a couple years before the conduct underlying this offense, and the 2005 gun transfer is not enough to establish constructive liability, the 2005 transfer does make it reasonably foreseeable that Valderas would still have at least one gun. The Defendant did not provide evidence that he gave Valderas the gun with some instructions on how to dispose of it. In addition, the Defendant argues that he was just a shop owner who allowed drugs to be unloaded. The evidence contradicts the Defendant's self-portrayal. The Defendant dismissed his employees when a car with drugs came in for unloading and he admitted his fingerprints would be on the drugs stashed at the shop, suggesting that he was more involved in the drug operation than simply allowing

others to unload drugs at the shop. Mail addressed to the Defendant was located with the drugs under the floor, the upstairs of the shop contained large amounts of cash, a vacuum sealer, and the Defendant's Texas identification card. The safe at the Defendant's shop contained money from the CI. Also, the Defendant's residence contained a candle of Jesus Malverde, an icon of drug traffickers. This is a close case in the sense that there is not much evidence that the Defendant could foresee guns in particular would be involved, except the one gun he provided Valderas in 2005. *See United States v. Connor*, 950 F.2d 1267, 1277 (7th Cir. 1991) (discussing cases where a theory of co-conspirator liability was not necessary because "the defendant was with the participant who possessed the gun and knew that the gun was present"). However, the Defendant's knowledge about the scope and extent of the drug operations in addition to the 2005 gun transfer is enough to establish that the Defendant could foresee a co-conspirator, namely Valderas, possessing a firearm.

The Defendant correctly highlights that this case is distinguishable from cases where a defendant provided a co-conspirator with a firearm specifically in furtherance of the conspiracy. *See, e.g.*, *United States v. Taylor*, 111 F.3d 56, 59–60 (7th Cir. 1997); *United States v. Banks*, 987 F.2d 463, 467–68 (7th Cir. 1993). However, the simple passage of time does not diminish the forseeability that Valderas would still posses at least one firearm, which, along with the Defendant's knowledge about the scope of the drug operation, is enough to trigger an enhancement under Sentencing Guideline § 2D1.1(b)(1) based on a theory of co-conspirator liability.

**D.    Drug Quantities**

The Defendant argues that drugs found at his co-conspirators' house (in a jacket pocket and safe), should not be included in the PSR calculations of the Defendant's drug quantities in paragraph 42 of the Amended PSR. The Government responds that all of the drugs possessed by the conspiracy should count against the Defendant. The Court will not rule on this issue because the parties agree that the base level offense is the same whether or not the additional drug quantities are included in the calculation. *See* Fed. R. Crim. P. 32(i)(3)(B).

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendant's request for application of the safety valve pursuant to Sentencing Guideline § 5C1.2, DENIES the Defendant's request for an adjustment for mitigating role under Sentencing Guideline § 3B1.2, OVERRULES the Defendant's objections to paragraph 28 of the PSR, and GRANTS the Government's request for a firearms enhancement under Sentencing Guideline § 2D1.1(b)(1). The Court ORDERS the United States Probation Office to revise the PSR within two weeks from the date of this Order. The Court CONFIRMS the sentencing hearing on November 1, 2010, at 2:00 PM.

SO ORDERED on October 8, 2010.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT